BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS

*v.*

JAMES D. BRUNER.

*Opinion filed October 24, 1898.*

1. CONTRACTS—*school teacher's year is not, as a matter of law, twelve months.* A contract whereby one agrees to teach in an institution of learning at a fixed salary per year cannot be said, as a matter of law, to give the institution the exclusive right to the teacher's services for full twelve months, in the absence of any showing that such was the understanding.

2. SAME—*question of intention is settled by the Appellate Court.* The question of the understanding of the parties to a contract of employment is a mixed question of law and fact, to be determined by the court under all the circumstances, and is settled by the Appellate Court's judgment of affirmance.

3. SCHOOLS—*the University of Illinois is not exempt from suit.* The University of Illinois is not exempt from suit on the ground that it is a mere agency of the State, as its charter expressly provides that it may sue and be sued, plead and be impleaded.

*University of Illinois* v. *Bruner*, 66 Ill. App. 665, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. W. G. EWING, Judge, presiding.

CUNNINGHAM & BOGGS, for plaintiff in error.

NEWMAN, NORTHRUP & LEVINSON, for defendant in error.

Per CURIAM: Defendant brought suit against plaintiff in error, in the superior court of Cook county, for an alleged balance due him on salary as a professor in the faculty of the university. On a trial before the court without a jury judgment was entered for the plaintiff for $300 and costs, which, on appeal to the Appellate Court, has been affirmed.

Plaintiff's case is, that he was employed to teach in the university for the year 1894-95, beginning Septem-

ber 1, 1894, at a salary of $1800; that he taught during the school year, ending about June 1, 1895; that he received only the sum of $1500 for his services, leaving a balance due him of $300.   The defense sought to be interposed to this claim is, that about the beginning of the vacation of 1895 plaintiff left the institution and went to Chicago, where, during the months of July and August, he was in the employ of the Chicago University, and it is insisted that for these two months a *pro rata* amount ($300) should be deducted from the year's salary.   In other words, the controversy between the parties grows out of the different constructions they place on the contract of employment.   Plaintiff's contention is, that he was employed for a school year of nine months, the understanding between him and the university trustees being that no services would be required of him during the summer vacation of three months.   The defendant seems to understand that it was entitled to the time of the plaintiff for the whole year of twelve months, whether it needed his services or not, and therefore if he earned anything by working for others the amount should be credited on his salary.

The only written evidence of the employment, so far as shown by the abstract, is a notification addressed to plaintiff, signed "W. L. Pillsbury, Secretary," dated July 10, 1893, saying: "The board of trustees of the University of Illinois has appointed you professor of the Romance Languages in the university, at a salary of $1800 a year, beginning September 1, 1893.  Please advise me whether or not you accept this appointment."   The appointment was accepted, and it appears that the employment was continued for the next year under the same appointment. On March 16 plaintiff tendered his resignation, to take effect September 1, 1895.  He then continued to teach until the beginning of the summer vacation, when he left the institution.   Under these facts we do not regard the construction of the agreement as being before us, even

if propositions of law had been submitted to the trial court involving that question. The understanding of the parties was a mixed question of law and fact, to be determined by the court under all the circumstances, and is settled by the judgment of affirmance in the Appellate Court. The employment of one to teach in a college or university like this for a year cannot, as a matter of law, be said to mean a year of twelve months, in the absence of some showing that such was the understanding of the parties.

The legal points raised here are, that the trial court erred in refusing to require the plaintiff to answer as to how much he received from the Chicago University, and in refusing to hold, as a proposition of law, that the defendant could not be sued, being a mere agency of the State. The first of these alleged errors is disposed of by what we have already said, so far as it could have any practical effect upon the judgment below. Under the contract, as construed by the Appellate Court, it could make no difference what the plaintiff earned or received during the three months of vacation.

The second assigned error is, in our opinion, wholly without merit. The charter of the university expressly provides that it may sue and be sued, plead and be impleaded. The provision is substantially that found in all the charters of charitable institutions of the State, boards of education, school directors, and other similar governmental agencies. It has never been doubted that these corporations could be sued, the same as individuals. We cannot, if we would, disregard the plain language of the statute. The judgment here makes no provision for the issuing of execution, and therefore the question whether the trust property of the institution may be sold to satisfy the judgment is not presented. When the legislature has expressly so stated, we can see no reason why the disputes between corporations like this and others should

not be adjusted in the legal tribunals. No rule of public policy prohibits it.

The reasoning in the case of *Thomas* v. *Board of Trustees*, 71 Ill. 310, is not applicable to this case. There the question was whether the property of this institution could be subjected to a mechanic's lien, and it was answered in the negative. There is a marked distinction between permitting an ordinary suit at law or in equity against this corporation, and permitting its property to be encumbered and sold under mechanic's lien proceedings. The difference is very similar to that which permits a city or county to be sued, but refuses to allow the issuing of an execution on a judgment against them. One of the reasons assigned in the above case for refusing to allow a mechanic's lien is, that an adequate remedy is presented in an ordinary suit at law.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*